COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and Senior Judge Fitzpatrick


VICTORIA M. MacLEAN

                                                    MEMORANDUM OPINION[*]
v.        Record No. 1789-07-3                             PER CURIAM
                                                     JANUARY 22, 2008
ROANOKE COUNTY
   DEPARTMENT OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF THE CITY OF SALEM
                         Robert P. Doherty, Jr., Judge

          (Leisa K. Ciaffone; Leisa K. Ciaffone, P.C., on brief), for appellant.
          Appellant submitting on brief.

          (Joseph B. Obenshain, Senior Assistant County Attorney; Roanoke
          County Attorney's Office, on brief), for appellee.  Appellee
          submitting on brief.

          (Holly S. Peters, on brief), Guardian *ad litem* for the minor child.
          Guardian *ad litem* submitting on brief.


        On June 21, 2007, the trial court terminated the residual parental rights of Victoria M.

MacLean (appellant) to her daughter, I.M., pursuant to Code § 16.1-283(C)(2).  On appeal,

appellant challenges the sufficiency of the evidence proving the requirements for a termination

pursuant to Code § 16.1-283(C)(2).  Appellant also contends the trial court erred in finding the

removal of I.M. from appellant's custody was warranted.  For the following reasons, we affirm

the trial court's decision.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On appeal, we view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

I.M. was born to appellant on October 19, 2003.[1] On May 25, 2005, appellant left I.M., with nothing but some diapers, at the entrance to their apartment building. Appellant told her neighbors she was taking the bus to a hospital and would return by 3:00 p.m. Appellant left the child even though appellant's neighbors refused to be responsible for I.M.'s care.

Upon receiving a report about the situation, Shannon Brabham, a social worker with Roanoke County Department of Social Services (RCDSS), went to the apartment building and located I.M. Appellant's neighbors told Brabham they had not agreed to care for the child that day. Brabham called the hospital and had appellant paged in both the main hospital and the emergency room. Appellant did not respond. Because it was after 3:00 p.m., Brabham removed I.M. from the home and left information instructing appellant to contact RCDSS.

At a hearing on May 31, 2005, the juvenile and domestic relations district court (juvenile court) found by a preponderance of the evidence that I.M. had been abused and neglected, and granted RCDSS temporary legal custody of I.M.[2] By dispositional order dated August 1, 2005,

---

[1] The record does not reflect that I.M.'s father resided with appellant and I.M. at any time relevant to this proceeding. The parental rights of I.M.'s father were terminated, and he did not appeal this decision.

[2] During RCDSS's investigation of the complaint that appellant abandoned I.M. on May 25, 2005, one of appellant's neighbors said she had forgotten, when she initially spoke to Brabham, that she had agreed to watch I.M. on May 25. In Brabham's opinion, the neighbor was not a suitable caretaker for I.M. due to brain damage and was particularly sensitive to influence by others. Ultimately, the complaint of abuse and neglect was determined unfounded by RCDSS.

custody of I.M. was transferred to RCDSS based upon abuse and neglect of the child. [3] The goal of the foster care service plan for I.M. was to return home to appellant. To achieve this goal, appellant was ordered, among other things, to have a substance abuse assessment by David Geho, remain chemically free, submit to a psychological evaluation, comply with restrictions regarding visitation with I.M., complete parenting classes, and maintain suitable housing and stable employment for a period of six months.

In July 2005, appellant received treatment at the hospital for anxiety and depression. She was prescribed three medications and given a thirty-day supply of the drugs. On August 4, 2005, appellant was referred by RCDSS to Dr. Manjit K. Vohra at the Center for Emotional Care.[4] Dr. Vohra prescribed three medications for appellant, but not the medications she desired. Appellant was to see Dr. Vohra monthly for medication management reviews. However, appellant did not like Dr. Vohra, and subsequently appeared for only one visit with her.

In September 2005, appellant told RCDSS she had not been able to afford to fill her prescriptions for medications. RCDSS provided appellant a list of agencies, and their telephone numbers, she could contact to obtain assistance with the cost of prescription medication. Samantha Hinton, a RCDSS social worker, advised appellant that she needed to contact the agencies before RCDSS would consider assisting her with the cost of medications. Appellant did not provide Hinton with any details about what agencies she contacted for assistance.

Rachel Preston, a parent advocate mentor, was appointed to assist appellant in reaching the goals of the foster care service plan. In Preston's presence, appellant called some of the agencies on the list Hinton provided, but appellant was unable to obtain assistance. Many of the agencies had

---

[3] Appellant did not file an appeal from the dispositional hearing.

[4] The record does not contain a report from Dr. Vohra, nor does it indicate the diagnosis she rendered after evaluating appellant.

waiting lists or required the recipient of such assistance to be employed, and appellant was not working at the time. Hinton called two of the agencies on the list, and learned appellant had not contacted them.

Preston provided appellant with transportation to help her secure employment and for her scheduled visitation sessions with I.M. Despite Preston's assistance, however, appellant did not maintain stable employment. After I.M. was removed from appellant's custody, she worked at a series of different establishments for brief periods, was unemployed for months, and spent a portion of the time in jail.[5]

Appellant's participation in scheduled visitation with I.M. was sporadic. Appellant would cancel visitation sessions at the last minute, appear late, or simply fail to appear. While at times appellant behaved appropriately during her supervised visitation with I.M., she was easily distracted and spent portions of her visitation periods talking on the telephone. Throughout her interactions with RCDSS, appellant's attitude remained defiant and hostile, and she did not accept responsibility for the conditions that led to I.M.'s removal.

In November 2005, Preston visited the apartment appellant then occupied. Preston described the apartment as a "complete disaster" with beer bottles, cigarette butts, and old food about the place.

Geho performed a substance abuse assessment of appellant on October 13, 2005, and determined she had a low probability of substance dependence. Nonetheless, Geho recommended appellant attend six to eight individual sessions so that a complete evaluation and diagnosis could be reached. One month after Geho's assessment, appellant tested positively for cocaine.[6] Geho opined that appellant was in need of treatment and therapy for substance abuse. Appellant did not return

---

[5] On March 9, 2007, appellant was convicted of statutory burglary.

[6] Appellant again tested positively for cocaine on May 9, 2006.

for follow-up treatment with Geho. Nor did appellant complete a series of parenting classes as required.

RCDSS explored the placement of I.M. with relatives. Two relatives indicated an interest in obtaining custody of I.M., but they eventually dropped their petitions seeking custody.

At the time of the termination hearings in circuit court on March 7 and April 20, 2007, I.M. was thriving in the care of her foster family. She had established a close bond with the family, and the family desired to adopt her.

ANALYSIS

I.

A termination under Code § 16.1-283(C)(2) requires clear and convincing evidence that the parent,

> without good cause, ha[s] been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding reasonable and appropriate efforts of social, medical, mental health, or other rehabilitative agencies to such end.

On appeal, appellant argues she did not fail, without good cause, to remedy substantially the conditions that led to I.M.'s foster care placement and that RCDSS did not provide reasonable and appropriate efforts to assist her in doing so.

> When reviewing a decision to terminate parental rights, we presume the circuit court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)). In its capacity as factfinder, therefore, the circuit court retains "broad discretion in making the decisions necessary to guard and to foster

- 5 -

a child's best interests." Farley, 9 Va. App. at 328, 387 S.E.2d at 795.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 265-66, 616 S.E.2d 765, 769 (2005).

When I.M. was nineteen months old, appellant left the child at their apartment building without the consent of a responsible adult to care for her. Appellant did not return at the time she had promised, nor was RCDSS able to contact appellant regarding her child. As a result of this situation, RCDSS effected an emergency removal of I.M.

Subsequent to the child's removal, the juvenile court determined that to remedy the neglectful conditions leading to the child's placement in foster care, appellant was required to comply with a number of conditions and assume various responsibilities. The record demonstrates appellant consistently failed or refused to comply with the requirements of the foster care service plan. In the twenty-two months between I.M.'s removal and the termination hearing, appellant did not maintain steady employment or obtain suitable housing. In fact, appellant spent a portion of that time in jail and was convicted of a felony. She did not complete the substance abuse treatment recommended by Geho, and tested positively for drugs. Appellant did not follow up with Dr. Vohra. Appellant failed to follow the rules of RCDSS regarding visitation with her child, and her visitation with I.M. was sporadic. Throughout her contact with RCDSS, appellant remained hostile to the agency's efforts.

Appellant maintains that, because RCDSS did not provide her with funding for certain medications she desired, she either had good cause for failing to comply with the foster care service plan or the efforts of RCDSS to assist her were not "reasonable and appropriate." However, appellant presented no medical evidence she had been diagnosed with a condition preventing her from being an effective parent unless she received medication. Nor was there evidence she had been prescribed medication necessary to enable her to meet the requirements of the foster care service plan. Appellant refused to continue treatment with Dr. Vohra, to whom

RCDSS referred appellant for medication management. Thus, appellant did not have good cause for not complying with the conditions imposed by the juvenile court for reunification with her daughter.

Because "'[r]easonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case," Ferguson v. Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992), a trial judge "must determine what constitutes reasonable and appropriate efforts given the facts before the court." Id. The evidence proved RCDSS provided appellant with a wide range of services after I.M. entered foster care. Preston was appointed to serve as appellant's parent advocate mentor, and was available to assist appellant in achieving the goals required of her. Despite Preston's efforts, appellant did not hold a steady job or appear consistently for visitation with I.M. Appellant refused the services of both Geho and Dr. Vohra that were made available to appellant by RCDSS.

Appellant claims Hinton arbitrarily required her to contact a number of agencies and request financial assistance with her medications. As noted above, however, appellant presented no medical evidence of a diagnosis. In light of all the circumstances, particularly appellant's inability or unwillingness to maintain employment, RCDSS's efforts to assist appellant were not rendered unreasonable or inappropriate by requiring appellant to demonstrate a personal commitment to obtaining the medications she claimed she needed in order to parent I.M.

We recognize that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action.'" Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-28 (1991) (quoting Lowe v. Dep't of Public Welfare of Richmond, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)). However, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10

Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Because the evidence supports the trial court's decision to terminate appellant's parental rights, we do not disturb it.

II.

Appellant also contends the evidence did not prove the child's removal from her custody in May 2005 was warranted. In its August 1, 2005 dispositional order, the juvenile court found the removal justified and awarded RCDSS custody of I.M. Pursuant to Code § 16.1-278.2(D), a dispositional order "is a final order from which an appeal may be taken in accordance with § 16.1-296." Notwithstanding Code § 16.1-278.2(D), appellant did not appeal the dispositional order to the circuit court.

Even assuming without deciding review of the dispositional order is permissible in this appeal, RCDSS was justified in removing I.M. from appellant's custody on May 25, 2005. On that date, appellant either abandoned I.M. at the apartment building despite her neighbors' refusal to be responsible for the child, or she left the young child with a person who was unable to remember she had agreed to care for the child. Appellant left the child with no provisions or emergency contact information. Appellant did not return at the time she promised. The record thus supports the juvenile court's finding that appellant's irresponsible behavior rendered I.M. abused and neglected.

CONCLUSION

For the foregoing reasons, we affirm the trial court's termination of appellant's parental rights to I.M.

Affirmed.